**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

**DENASHA OLIVER,** individually, and on
behalf of others similarly situated,

                Plaintiff,

vs.

**CENTENE CORP.**, a Delaware Corporation,

                Defendant.

Case No.:

Hon.:

---

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND JURY DEMAND**

     Plaintiff, DENASHA OLIVER ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Class/Collective Action Complaint against Defendant CENTENE CORP. ("Defendant"), and states as follows:

**INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), § 820 ILCS 105/1, *et seq*., and the Illinois Wage Payment and Collection Act ("IWPCA"), § 820 ILCS 115/1, *et seq*., among other laws.

2.     According to its website, Defendant "is the largest Medicaid managed care organization in the U.S.,"[1] providing "access to high-quality healthcare, innovative programs and a wide range of health solutions that help families and individuals get well, stay well and be well."[2] Defendant boasts itself as being "a diversified, multi-national FORTUNE® 50 company[,]" "the

---

[1] *See*, https://www.centene.com/ (last visited Feb. 10, 2021).
[2] *See*, https://www.centene.com/who-we-are.html (last visited Feb. 10, 2021).

national leader in managed long-term services and supports, and the number one carrier in the nation on the Health Insurance Marketplace." *Id*.

3.      Defendant has a family of subsidiary companies across the United States to assist members across the country in accessing high-quality, culturally sensitive healthcare services. In furtherance of this objective, Defendant employs thousands of hourly, nonexempt call center employees, referred to as Customer Service Representatives ("CSRs"). These employees provide services primarily over the phone via in-bound or out-bound calls to Defendant's members and health care providers.

4.      Defendant's CSRs, including Plaintiff, work in multiple call center facilities (referred to as "Service Centers") located throughout the United States, including Carbondale, Illinois. *See*, https://www.centene.com/news/carbondale-service-center-brings-jobs-to-southern-illinois.html (last visited Feb. 11, 2021).

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf*.

6.      One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

7.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to

2

download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

8.      Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed. Instead, Defendant requires its CSRs to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, but trains and instructs its CSRs not to record this time on their electronic timesheets in its timekeeping system, Beeline. This policy results in CSRs not being paid for all time worked, including overtime.

9.       In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems. The time CSRs spend booting up and logging into these programs and applications before and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

10.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

11.     Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

12.     The individuals Plaintiff seeks to represent in this action are current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

13.     Defendant knew or could have easily determined how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiff and

the putative Collective and Class for this work, but did not.

14.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make her, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

15.     This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

16.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

17.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

18.      Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's CSRs, including Plaintiff, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

19.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiff's federal claims that they form

part of the same case or controversy under Article III of the United States Constitution.

20. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

21. This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Missouri, has its principle place of business in Missouri, and is registered with the Missouri Secretary of State and employs individuals within the state of Missouri.

22. Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in the state of Missouri, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant resides and does business in this District and maintains its principal place of business in this District.

## PARTIES

24. Plaintiff DENASHA OLIVER ("Plaintiff Oliver") is an Illinois resident who worked for Defendant as a CSR at its Carbondale, Illinois Service Center from approximately June 2019 through March 2020. Defendant paid Plaintiff Oliver an hourly wage, most recently at the rate of $15.00 per hour. Plaintiff Oliver signed a consent to join this collective action lawsuit, attached hereto as **Exhibit A**.

25.     Defendant CENTENE CORP. is a Delaware Corporation (File Number 3439838) with its principal place of business located at Centene Plaza, 7700 Forsyth Boulevard, St. Louis, Missouri 63105. According to Defendant's 2017 Form 10-K, Defendant "provide[s] a full spectrum of managed healthcare products and services, primarily through Medicaid (which includes CHIP, LTSS, Foster Care, ABD and MMP), Medicare, and commercial products" and "have operations domestically and internationally." *See*, https://investors.centene.com/node/22451/html (last visited Feb. 11, 2021). Upon information and belief, Defendant has employed thousands of CSRs, including Plaintiff, throughout the United States to assist members and providers with various coverage issues and connect patients with health care providers.

## GENERAL ALLEGATIONS

26.     Defendant employed Plaintiff as a CSR at its Service Center in Carbondale, Illinois within the last three (3) years.

27.     Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to Defendant's members and other health care providers; (c) ensuring that every call is documented and accounted for in Defendant's system; and (d) logging out of the computer software programs and applications and the hard phones and shutting down their computers.

28.     Defendants' CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiff, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek. These hours result in CSRs working

overtime on a weekly basis.

29.     Indeed, throughout her employment with Defendant, Plaintiff was required to work a substantial amount of unpaid time, including overtime, as part of their roles as CSRs.

30.     At all relevant times, Defendant controlled its CSRs' work schedules, duties, protocols, applications, assignments and employment conditions. Defendant was also responsible for training and continuing its CSRs' education in their role as CSRs.

31.     Defendant has strict expectations that its CSRs maintain 95% adherence to their schedules, meaning that CSRs must field calls for more than 95% of the time that they are on call. A CSR's failure to meet this metric leads to disciplinary action and other penalties.

32.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems. These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

33.     Upon information and belief, Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

34.     Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can log into Defendant's phone system and begin taking and making phone calls. Pursuant to Defendant's policies, procedures and direction, CSRs are prohibited from logging into Defendant's phone system more than "1 minute" before their scheduled shift without an "adherence hit."

35.     Defendant enforces this policy through its compensation and timekeeping

procedures. For example, CSRs, including Plaintiff, are instructed to only include the time that they are fully prepared to field calls in their hours worked each shift. If CSRs include any time worked before, they were prepared to take and make calls, Defendant either retroactively amends the CSR's timesheet or otherwise rejects them.

36.     Defendant furthermore enforces its policy of requiring all computer networks, programs and applications open and ready at the commencement of a CSR's shift through its Call Quality assurance system, which Defendant uses to monitor and grade CSRs' calls. Defendant utilizes Call Quality Scoring Guidelines to perform call assessments.

37.     Defendant's scoring guidelines measure a CSRs ability to adhere to mandatory protocol and are comprised of various performance metrics, including but not limited to a CSRs complete and correct resolution of issues and inquiries. This performance metric necessarily requires that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

38.     Also part of Defendant's scoring system is the requirement that Defendant's CSRs document each call "fully[,]" "includ[ing] [a] reason for the call, action taken, resolution and information provided." CSRs are expressly advised that there can be "no details missing." This portion of the scoring guidelines is worth ten (10) out of 100 points, with ninety-five (95) being a passing score. Because Defendant's CSRs are instructed that "[t]he hold time for a single instance [during calls] may not exceed 1 minute[,]" and the CSRs are otherwise speaking to a member or a provider during the call, CSRs are forced to complete the documentation for each call after the call's conclusion.

39.     Defendant provides CSRs with "15 minutes of discretionary [time] to use daily[,]" however, pursuant to Defendant's policies and procedures, this "[d]iscretionary [time] should

ONLY be used for the times [CSR's] are in the restroom." In other words, Defendant neither permits CSRs to use the paid discretionary time for the computer boot up or shut down process, nor allows them to use it for documenting call notes.

40.     Thus, Defendant's policies and procedures require that CSRs complete call documentation during their lunch breaks and/or before or after their scheduled shifts.

41.     As mentioned above, Defendant requires its CSRs to record their hours worked during each shift in its timekeeping system, Beeline, but prohibits them from recording time spent performing pre-shift, mid-shift and post-shift work tasks. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

42.     Defendant also maintains an attendance adherence policy that subjects CSRs, including Plaintiff, to discipline if they clocked-in (recorded their time) "late" for their shifts. Specifically, Defendant utilizes an Attendance Point System whereby CSRs are issued a pre-determined number of points for "minutes missed from [their] scheduled shift," with twelve (12) points leading to termination of employment. For example, a CSR will be issued .25 of a point each time they are between one (1) and thirty (30) minutes late for their scheduled shifts. If Plaintiff or the other CSRs clocked-in even a few seconds after 8:30 a.m., they would receive .25 of a point. CSRs are advised that "points will negatively impact your attendance record and could affect your eligibility for promotions, company incentives, and can ultimately lead to disciplinary action progressively up to and including termination."

43.     Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek. Thus, the

9

hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

44.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which it fails to pay its CSRs for no less than fourteen (14) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

**A.   Pre-Shift Off-the-Clock Work**

45.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (10) to fifteen (15) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications. Prior to the commencement of each scheduled shift, Plaintiff, as well as the other CSRs, was required to complete the following tasks:

a.     Turn on her computer;

b.     Wait for OMNI to load, and then enter a username and password;

c.     Open MEDI and enter a username and password;

d.     Open TruCare and enter a username and password;

e.     Open OTC and enter a username and password;

e.     Open AMISYS and enter a username and password;

f.     Open NPPES and enter a username and password;

g.     Open Outlook and read emails with work instructions;

h.     Open Google Chrome and other various websites necessary for answering questions;

i.     Turn on and enter a password on their hard phone; and

j.      Open Beeline, enter a username and password, make herself available to take calls, and record the time she was ready to begin taking calls.

46.     The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRS must have all of the above referenced computer programs, systems, and applications up and running on their computers and hard phone in order to be prepared to accept incoming calls. Yet, Defendant trains and instructs CSRS not to include the time at which the CSRs begin their daily boot up and login process in the time recorded in Beeline.

47.     As a result, Defendant maintains a common plan and policy pursuant to which it fails to pay CSRs for no less than ten (10) minutes per day of work performed in connection with the above pre-shift activities.

**B.  Meal-Period Off-the-Clock Work**

48.     Defendant provides its CSRs with one (1) thirty (30) minute unpaid lunch break per shift. However, in reality, Defendant routinely requires CSRs to work through their unpaid meal periods to catch up on documenting calls.

49.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>*completely relieved*</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

50.     Defendant does not provide CSRs with a bona fide meal period because its policies

11

and procedures require CSRs to log call notes during their scheduled meal breaks.

51.     CSRs spend approximately two (2) to three (3) minutes performing this work during their unpaid meal breaks, however, such time is even greater, for example at least four (4) to five (5) minutes, on days when CSRs are further behind on work. Thus, Defendant maintains a common plan and policy pursuant to which it fails to pay CSRs for no less than two (2) minutes per day of work performed during their meal period.

52.     Defendant's management was aware that this was Plaintiff and other CSRs' practice, but permitted and even rewarded it through Defendant's schedule adherence metrics.

**C. <u>Post-Shift Off-the-Clock Work</u>**

53.      Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

54.     The shutdown and logout process takes at least two (2) to three (3) minutes per day.

55.     Pursuant to Defendant's policies, training and direction, Plaintiff and the other CSRs were not allowed begin the shutdown and logout process until their scheduled shift ended and they completed their last fielded call. Defendant prohibited CSRs, including Plaintiff, from including the time it took them to shut down and log out of all computer systems, programs and applications in their hours worked.

56.     Defendant also prohibited its CSRs from including in their hours worked the time it took them after their scheduled shift and last call ended to finish documenting fielded call notes. Instead, Defendant required CSRs to note the time their last call concluded in Defendant's self-recording time system as the time their shift ended.

57.     Thus, it was Defendant's timekeeping practice for CSRs, including Plaintiff, to

catch up on documenting call notes and hours worked outside (after) the end time they recorded in Beeline.

58.     The unpaid off-the-clock work performed subsequent to each shift by Plaintiff and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**D.  Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies**

59.     An example of specific workweeks where Defendant failed to pay Plaintiff all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 01/19/20 to 01/25/20**

- Plaintiff Oliver was paid at a rate of $15.00 per hour for her 40.00 regular hours and $22.50 per hour for 0.21 overtime hours.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of fourteen (14) to twenty-three (23) minutes per shift, at five shifts per week, Plaintiff Oliver should have been paid an additional seventy (70) to 115 minutes at her overtime rate of $22.50 during the pay period.

**Exhibit B**, Oliver Pay Stub.

**E.  Defendant Benefitted From the Uncompensated Off-the-Clock Work**

60.     At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiff and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

61.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of its CSRs.

62.     At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period and post-shift activities. However, Defendant failed

13

to do so and failed to compensate CSRs for the off-the-clock work they performed.

63.     At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

64.     At all relevant times, Defendant used its attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

65.     Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

66.     At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period and post-shift activities they performed. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

67.     Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

68.     Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

69.     Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

70.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at its brick-and-mortar service center facilities at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

71.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated CSRs.

72.    Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

73.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

74.    Defendant assigned and/or was aware of all of the work that Plaintiff and the members of the FLSA Collective performed.

75.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.    Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

        b.     Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

76.     Defendant is aware or should have been aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

77.     Defendant's unlawful conduct has been widespread, repeated and consistent.

78.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

79.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

80.     Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

81.     Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

82.     Those similarly situated employees are known to Defendant, are readily

identifiable, and can be located through Defendant's records.

83.     Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 ILLINOIS CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at its brick-and-mortar service center facilities in Illinois at any time during the applicable statutory period*.

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

85.     The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical. Plaintiff reasonably estimates that there are thousands of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

86.     There is a well-defined community of interest among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class.   These common legal and factual questions include, but are not limited to, the following:

> a.  Whether the pre-, mid-, and post-shift time Rule 23 Illinois Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time; and
>
> b.  Whether the Rule 23 Illinois Class members are owed wages for time

spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof.

87.    Plaintiff's claims are typical of those of the Rule 23 Illinois Class in that she and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

88.    Plaintiff will fully and adequately protect the interests of the Rule 23 Illinois Class and she has retained counsel who are qualified and experienced in the prosecution of Illinois wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

89.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

90.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

91.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct.

1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

92.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class and declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

93.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant at its brick-and-mortar service center facilities at any time during the applicable statutory period***.

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

94.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates that there are thousands of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

95.     There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions include, but are not limited to, the following:

a.      Whether the time Rule 23 Class members spent on pre-shift, mid-shift and post-shift off-the-clock work activities is compensable time;

b.      Whether Rule 23 Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount thereof; and

c.      Whether Defendant's non-payment of wages for all compensable time

amounted to a breach of contract and/or unjust enrichment.

96.     Plaintiff's claims are typical of those of the Rule 23 Class in that she and all other Rule 23 Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims, and her legal theories are based on the same legal theories as all other Rule 23 Class members.

97.     Plaintiff will fully and adequately protect the interests of the Rule 23 Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

98.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

99.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

100.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the

specified criteria to pursue his claim as a class action").

101.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.***
**FAILURE TO PAY OVERTIME WAGES**

102.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

103.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

104.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

105.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

106.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

107.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

108.    At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform no less than fourteen (14) to twenty-three (23) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

109.     The off-the-clock work performed every shift by Plaintiff and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

110.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

111.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

112.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Illinois Class Action)**
**Illinois Minimum Wage Law, §§ 820 ILCS 105/1, *et seq.*;**
**Illinois Wage Payment and Collection Act, §§ ILCS 115/1, *et seq.*.**

113.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

114.     At all times relevant to the action, Defendant was an employer covered by the mandates of the Illinois Minimum Wage Law (IMWL), and Plaintiff and the Rule 23 Illinois Class are employees entitled to the IMWL's protections.

115.     The IMWL, §§ 820 ILCS 105/1, et. seq. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* § 820 ILCS 105/4; 820 ILCS 105/4a.

116.    820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "the employee may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

117.    The Illinois Wage Payment and Collection Act (IWPCA) "applies to all employers and employees in [Illinois], but excepting employees of the State or Federal governments." Plaintiff and the Rule 23 Illinois class were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

118.    Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

119.    Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

120.    820 ILCS 115/9 prohibits "deductions by employers from wages or final compensation." Accordingly, in workweeks that the Defendants unilaterally altered time records to exclude the pre-, mid-, and post-shift activities discussed herein, Defendant violated 115/9 of the IWPCA.

121.    Additionally, 820 ILCS 115/14(a) provides that "an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each

month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

122.     Defendant violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

123.     As a result, Plaintiff and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

<u>**COUNT III**</u>
<u>**(Rule 23 Nationwide Class Action)**</u>
<u>**BREACH OF CONTRACT**</u>

124.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

125.     At all times relevant to this action, Defendant had a contract with Plaintiff and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate.

126.     Each Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

127.     Plaintiff and every other Rule 23 Class member performed under the contracts by doing their jobs and carrying out the off-the-clock activities that Defendant required or accepted.

128.     By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for all of the work they performed each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Class.

129.     Plaintiff's and the Rule 23 Class members' remedies under the FLSA are

24

inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure gap time claims).

130.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an employer's job.

131.    As a direct and proximate result of Defendant's breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Class have been damaged, in an amount to be determined at trial.

## COUNT IV
## (Rule 23 Nationwide Class Action)
## UNJUST ENRICHMENT

132.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

133.    This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

134.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Class members performed for the benefit of Defendant.

135.    Plaintiff and every other Rule 23 Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

136.    By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the pre-shift, mid-shift and post-shift off-the-clock work they performed each shift, Defendant was unjustly enriched.

137.    Plaintiff and the Rule 23 Class members performed off-the-clock work tasks at the

request of and without objection by Defendant.

138.    Defendant received and accepted the above-referenced off-the-clock work services

from Plaintiff and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

139.    Upon information and belief, Defendant used the monies owed to Plaintiff and every

other Rule 23 Class member to finance its various business ventures or pay its equity owners.

140.    Defendant has been unjustly enriched by the retention of monies received pursuant

to the services Plaintiff and the Rule 23 Class performed for Defendant's benefit, without having

compensated Plaintiff and the Rule 23 Class for the same.

141.    Plaintiff and the Rule 23 Class suffered detriment due to Defendant's failure to

compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Class

were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

142.    As a direct and proximate result of Defendant's actions, Plaintiff and every other

Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on her own behalf and on behalf of the putative FLSA Collective,

the Rule 23 Illinois Class, and the Rule 23 Class, requests judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    Certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims under the IMWL and IWPCA (Count II);

c.    Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members, the Rule 23 Illinois Class members, and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated

individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

e.    Designating Plaintiff as the representative of the FLSA collective action Class, the Rule 23 Illinois Class, and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

f.    Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g.    Declaring Defendant's violation of the FLSA was willful;

h.    Declaring Defendant violated the IMWL and the IWPCA as cited herein;

i.    Declaring Defendant's violation of the IMWL and IWPCA was willful;

j.    Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

k.    Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class, the Rule 23 Illinois Class, and the Rule 23 Class the full amount of damages and liquidated damages available by law;

l.    Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

m.    Awarding treble damages and penalty interest as provided by the IMWL and IWPCA;

n.    Awarding other pre- and post-judgment interest to Plaintiff on these damages; and

o.    Awarding such other and further relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: February 17, 2021       Respectfully Submitted,

**BURGER LAW**

/s/ Gary Burger
Gary Burger (32460)
500 N. Broadway, Suite 1860
St. Louis, MO 63102
Phone: (314) 542-2222
Email: gary@burgerlaw.com

*Local Counsel for Plaintiff and the
Putative Collective/Class Members*


**SOMMERS SCHWARTZ, P.C.**
Charles R. Ash, IV (P73877) (*Pro Hac Vice forthcoming*)
Alana Karbal (P82908) (*Pro Hac Vice forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
Phone: (248) 355-0300
Email: crash@sommerspc.com
Email: akarbal@sommerspc.com

*Attorneys for Plaintiff and the
Putative Collective/Class Members*